1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   PERCY LEE RHODES,                    Case No. 1:21-cv-00942-CDB (PC)

12              Plaintiff,                **ORDER GRANTING DEFENDANTS'**
                                          **MOTIONS FOR SUMMARY JUDGMENT**
13        v.
                                          (Docs. 50-52)
14   JOSEPH RUIZ, et al.,

15              Defendants.

16

17        Plaintiff Percy Lee Rhodes, a former county jail inmate, is a proceeding pro se and *in*

18   *forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983. This action proceeds on

19   Plaintiff's deliberate indifference to serious medical needs claims against Defendants Ruiz,

20   Lightner, and McComas, access to courts claim against Defendant Cortez, and failure to protect

21   and failure to train claims against Defendants Lightner.

22        **I.    INTRODUCTION**

23        On December 23, 2024, Defendants Lightner and Ruiz filed a motion for summary

24   judgment. (*See* Doc. 50.) That same date, Defendant Cortez filed a motion for summary

25   judgment. (*See* Doc. 51.) On December 24, 2024, Defendant McComas filed a motion for

26   summary judgment. (*See* Doc. 52.)

27        On January 16, 2025, when more than 21 days elapsed without a response by Plaintiff to

28   the motions for summary judgment, the Court issued its Order to Show Cause (OSC) Why

1    Sanctions Should Not be Imposed for Plaintiff's Failure to File an Opposition or Statement of

2    Non-Opposition. (Doc. 53.) Plaintiff was directed to file a written response to the OSC, or

3    alternatively, to file an opposition or statement of non-opposition to the pending summary

4    judgment motions within fourteen days. (*Id*. at 3.)

5         On January 21, 2025, Plaintiff filed a document titled "Notice and Warning to Defendant

6    Ivana Cortez [Fed. R. Civ. P. 56] Plaintiff's Opposition to Defendant's Motion for Summary

7    Judgment." (Doc. 54.) On January 28, 2025, Plaintiff filed a document titled "Plaintiff's

8    Statement of Failure to File An [Opposition] or Statement [of] Non-Opposition." (Doc. 55.) That

9    same date, Plaintiff also filed pleadings opposing summary judgment as to Defendants Lightner,

10   McComas, and Ruiz. (Docs. 56-58.)

11        On February 7, 2025, Defendants filed their responses to Plaintiff's opposition. (Docs. 61-

12   63.)

13        **II.     APPLICABLE LEGAL STANDARDS**

14            ***Motions for Summary Judgment***

15        Summary judgment is appropriate when it is demonstrated that there "is no genuine

16   dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

17   Civ. P. 56(a). A party asserting that a fact cannot be disputed must support the assertion by

18   "citing to particular parts of materials in the record, including depositions, documents,

19   electronically stored information, affidavits or declarations, stipulations (including those made for

20   purposes of the motion only), admissions, interrogatory answers, or other materials...." Fed. R.

21   Civ. P. 56(c)(1)(A).

22        Summary judgment should be entered, after adequate time for discovery and upon motion,

23   against a party who fails to make a showing sufficient to establish the existence of an element

24   essential to that party's case, and on which that party will bear the burden of proof at trial. *See*

25   *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "[A] complete failure of proof concerning an

26   essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.*

27   If the moving party meets its initial responsibility, the burden then shifts to the opposing party to

28   establish that a genuine issue as to any material fact actually does exist. *See Matsushita Elec.*

*Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of their pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists or shows that the materials cited by the movant do not establish the absence of a genuine dispute. *See* Fed. R. Civ. P. 56(c); *Matsushita*, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). Further, the opposing party must also demonstrate that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See Wool v. Tandem Computers, Inc.*, 818 F.2d 1433, 1436 (9th Cir. 1987). In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv.*, 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita*, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

   In resolving the summary judgment motion, the evidence of the opposing party is to be believed. *See Anderson*, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. *See Matsushita*, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. *See Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted).

1    *Deliberate Indifference to Serious Medical Needs & Failure to Protect*

2         "The Cruel and Unusual Punishments Clause[, under the Eighth Amendment,] was

3    designed to protect those convicted of crimes." *Whitley v. Albers*, 475 U.S. 312, 318 (1986)

4    (internal quotation marks & citation omitted). In contrast, "[c]laims by pretrial detainees are

5    analyzed under the Fourteenth Amendment Due Process Clause, rather than under the Eighth

6    Amendment." *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998) (citing *Bell v. Wolfish*, 441

7    U.S. 520, 535 n.16 (1979)). The Supreme Court has explained a Fourteenth Amendment claim is

8    subject to a different standard than a claim under the Eighth Amendment's Cruel and Unusual

9    Punishment Clause because the language and nature of the claims often differ, and "most

10   importantly, pretrial detainees (unlike convicted prisoners) cannot be punished at all." *Kinsley v.*

11   *Hendrickson*, 576 U.S. 389, 400 (2015). The Supreme Court held that, in contrast to the

12   subjective standard in an Eighth Amendment excessive force case, "an objective standard is

13   appropriate in the context of excessive force claims brought by pretrial detainees pursuant to the

14   Fourteenth Amendment." *Id*. at 402.

15        The Ninth Circuit has extended the *Kingsley* objective standard to failure to protect and

16   section 1983 medical care claims by pretrial detainees. *Gordon v. Cnty. of Orange*, 888 F.3d

17   1118, 1124-25 (9th Cir. 2018) (pre-trial detainee claims for violations of the right to adequate

18   medical care must be evaluated under an objective deliberate indifference standard); *Castro v.*

19   *Cnty. of Los Angeles*, 833 F.3d 1060, 1070 (9th Cir. 2016) (applying *Kingsley* objective standard

20   to failure to protect claims). Thus, to bring a pretrial detainee's failure to protect or inadequate

21   medical care claim under the Fourteenth Amendment, a plaintiff must establish:

22              (i) the defendant made an intentional decision with respect to the
                conditions under which the plaintiff was confined; (ii) those
23              conditions put the plaintiff at substantial risk of suffering serious
                harm; (iii) the defendant did not take reasonable available measures
24              to abate that risk, even though a reasonable official in the
                circumstances would have appreciated the high degree of risk
25              involved—making the consequences of the defendant's conduct
                obvious; and (iv) by not taking such measures, the defendant caused
26              the plaintiff's injuries.

27   *Gordon*, 888 F.3d at 1125; *Castro*, 833 F.3d at 1071. In contrast to the knowing and purposeful

28   state of mind in the first element, the remaining elements require an objective standard. *See*

4

1    *Castro*, 833 F.3d at 1070-71. Specifically, the third element must be viewed on each case's

2    particular facts and circumstances, and the plaintiff must prove the defendant acted with "more

3    than negligence but less than subjective intent – something akin to reckless disregard." *Gordon*,

4    888 F.3d at 1125 (quoting *Castro*, 833 F.3d at 1071).

5                              ***Access to Courts***

6            Prisoners retain the First Amendment right "to petition the government for a redress of []

7    grievances," which includes the specific right "to meaningful access to the courts[.]" *Silva v. Di*

8    *Vittorio*, 658 F.3d 1090, 1101-02 (9th Cir. 2011) (citation omitted), abrogated on other grounds as

9    stated in *Richey v. Dahne*, 807 F.3d 1202, 1209 n.6 (9th Cir. 2015). The constitutional right of

10   access to the courts generally requires prison officials to ensure that prisoners have the "capability

11   of bringing contemplated challenges to sentences or conditions of confinement before the courts."

12   *Lewis v. Casey*, 518 U.S. 343, 356 (1996); *Simmons v. Sacramento Cnty. Superior Court*, 318

13   F.3d 1156, 1160 (9th Cir. 2003) (discussing standard for pretrial detainees). To that end,

14   depending on the circumstances, prison officials may be required affirmatively to "help prisoners

15   exercise their rights" (e.g., provide reasonable access to "adequate law libraries or adequate

16   assistance from persons trained in the law"), or simply to refrain from "active interference" in

17   prisoner litigation. *Silva*, 658 F.3d at 1102 (citation omitted); *see, e.g.*, *Bounds v. Smith*, 430 U.S.

18   817, 828 (1977) (holding "that the fundamental constitutional right of access to the courts

19   requires prison authorities to assist inmates in the preparation and filing of meaningful legal

20   papers by providing prisoners with adequate law libraries or adequate assistance from persons

21   trained in the law") (footnote omitted), *overruled in part on other grounds by Lewis*, 518 U.S. at

22   354. Prison officials, however, are not required to ensure access beyond "[t]he tools ... inmates

23   need in order to attack their sentences, directly or collaterally, and in order to challenge the

24   conditions of their confinement." *Lewis*, 518 U.S. at 355 ("*Bounds* does not guarantee inmates the

25   wherewithal to transform themselves into litigating engines capable of filing everything from

26   shareholder derivative actions to slip-and-fall claims.... Impairment of [such] other litigating

27   capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction

28   and incarceration").

1    To state a viable denial of access claim, a prisoner must plausibly show that some official

2    misconduct (e.g., alleged inadequacies in the jail's library facilities or legal assistance program)

3    caused "actual injury" -- that is, that it frustrated or is impeding plaintiff's attempt to bring a

4    nonfrivolous legal claim. *Lewis*, 518 U.S. at 348-49; *Nev. Dep't of Corr. v. Greene*, 648 F.3d

5    1014, 1018 (9th Cir. 2011) (citing *Lewis*, 518 U.S. at 349) ("'Actual injury' means 'actual

6    prejudice with respect to contemplated or existing litigation'"), cert. denied, 566 U.S. 911 (2012).

7    The plaintiff's complaint must describe the alleged underlying claim, whether anticipated or lost,

8    and show that it is "nonfrivolous" and "arguable." *See Christopher v. Harbury*, 536 U.S. 403, 415

9    (2002).

10                        *Linkage, Causation, and Supervisory Liability*

11    Section 1983 provides a cause of action for the violation of constitutional or other federal

12    rights by persons acting under color of state law. *See* 42 U.S.C. § 1983. To state a claim under

13    section 1983, a plaintiff must show a causal connection or link between the actions of the

14    defendants and the deprivation alleged to have been suffered by the plaintiff. *See Rizzo v. Goode*,

15    423 U.S. 362, 373-75 (1976). The Ninth Circuit has held that "[a] person 'subjects' another to the

16    deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative

17    act, participates in another's affirmative acts, or omits to perform an act which he is legal required

18    to do that causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740,

19    743 (9th Cir. 1978) (citation omitted).

20    Liability may not be imposed on supervisory personnel for the actions or omissions of

21    their subordinates under the theory of respondeat superior. *Ashcroft v. Iqbal*, 556 U.S. 662, 676-

22    77 (2009); *see e.g., Simmons v. Navajo Cnty., Ariz.*, 609 F.3d 1011, 1020-21 (9th Cir. 2010)

23    (plaintiff required to adduce evidence the named supervisory defendants "themselves acted or

24    failed to act unconstitutionally, not merely that subordinate did"), *overruled on other grounds by*

25    *Castro v. Cnty of Los Angeles,* 833 F.3d 1060, 1070 (9th Cir. 2016); *Jones v. Williams,* 297 F.3d

26    930, 934 (9th Cir. 2002) ("In order for a person acting under color of state law to be liable under

27    section 1983 there must be a showing of personal participation in the alleged rights deprivation:

28    there is no respondeat superior liability under section 1983").

1    Supervisors may be held liable only if they "participated in or directed the violations, or

2    knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th

3    Cir. 1989). "The requisite causal connection may be established when an official sets in motion a

4    'series of acts by others which the actor knows or reasonably should know would cause others to

5    inflict' constitutional harms." *Corales v. Bennett*, 567 F.3d 554, 570 (9th Cir. 2009).  Accord

6    *Starr v. Baca*, 652 F.3d 1202, 1205-06 (9th Cir. 2011) (supervisory liability may be based on

7    inaction in the training and supervision of subordinates).

8    Supervisory liability may also exist without any personal participation if the official

9    implemented "a policy so deficient that the policy itself is a repudiation of the constitutional

10    rights and is the moving force of the constitutional violation." *Redman v. Cnty. of San Diego*, 942

11    F.2d 1435, 1446 (9th Cir. 1991) (citations & quotations marks omitted), *abrogated on other*

12    *grounds by Farmer v. Brennan*, 511 U.S. 825 (1970).

13    To prove liability for an action or policy, the plaintiff "must ... demonstrate that his

14    deprivation resulted from an official policy or custom established by a ... policymaker possessed

15    with final authority to establish that policy." *Waggy v. Spokane Cnty. Washington*, 594 F.3d 707,

16    713 (9th Cir. 2010). When a defendant holds a supervisory position, the causal link between such

17    defendant and the claimed constitutional violation must be specifically alleged. *See Fayle v.*

18    *Stapley*, 607 F.2d 858, 862 (9th Cir. 1979). Vague and conclusory allegations concerning the

19    involvement of supervisory personnel in civil rights violations are not sufficient. *See Ivey v.*

20    *Board of Regents*, 673 F.2d 266, 268 (9th Cir. 1982).

21    ### III.    PLAINTIFF'S FACTUAL ALLEGATIONS

22    Plaintiff's general factual allegations were summarized in the Court's First Screening

23    Order issued December 6, 2022, as follows:

24    > Briefly, Plaintiff contends that he was involved in a motor vehicle
      accident on August 18, 2020, at about 4:15 p.m., in Sanger,
25    > California. Members of the Fresno County Sheriff's Office
      responded. Plaintiff was arrested at about 4:30 p.m. Plaintiff
26    > contends his "S-500 Mercedez Benz, lap-top, and direct exspress
      card" were taken by Defendant Ruiz. Plaintiff requested medical
27    > attention, complaining to the "responding deputies and arresting
      officials, including the field supervisor." Instead, Plaintiff was placed
28    > in a police vehicle and transported to the Fresno County Jail.

7

Once at the jail, Plaintiff contends he "complained to his jailors of the need for medical assistance while dripping sweat, and wet from heat while handcuffed and locked inside the deputy's vehicle." Plaintiff's requests were "ignored, denied, delayed, and prevented by Deputy Joseph Ruiz." More than an hour passed, and Plaintiff continued to complain of head, neck and back pain and dizziness. Plaintiff requested to speak to the watch commander regarding his pain, "as well as the reason for [his] being detained."

Plaintiff contends he was released from the Fresno County Jail on August 19, 2020, at 4:43 a.m. In the jail lobby, Plaintiff called 911 for medical treatment. When emergency services arrived, Plaintiff was transported to Community Medical Center for treatment of his "injuries dizziness, nose bleed and pain."

Plaintiff contends he made inquiries of the Fresno County Sheriff's Department and the Fresno Police Department concerning his vehicle, laptop and debit card. Plaintiff subsequently filed a claim with the Fresno County Sheriff. On October 3, 2020, Plaintiff was admitted to "Community Behavioral Health for extensive treatment, due to experiencing nightmeres of Defendant Joseph Ruiz drawing and pointing his handgun …."

…

Next, Plaintiff contends he was "granted pro per privileges on January 20, 2021," and submitted multiple requests for a copy of "his minute order showing he was granted propria persona required documentation to initiate the process" that would allow him access to "legal research materials," the law library and telephone, "runners, investigators, etc." The "jail records unit denied, delayed, and prevented Plaintiff [from] exercising his right to self representation." Plaintiff was unable to "prepare, research, contact investigator for hire, causing duress and unfair trial." Plaintiff further contends that on April 15, 2021, all "free telephone calls were stopped for seven days by jail services," impeding Plaintiff's ability "to prepare strategy or otherwise resolve the dispute."

Plaintiff alleges that on April 12, 2021, he "had a medical encounter after third twenty four hour confine to bunk order from [his] jailors." He contends only one man at a time could use the restroom following a "jail dorm riot January 29, 2021." The dorm housed seventy-two men and Plaintiff was "forced to hold his urine for long periods of time under direct order of jail staff, until the top level had completed." Plaintiff alleges "Defendant Jail Nurse, Ben Ward" received Plaintiff's medical records from Community Medical Center, "confirming exzactly what Plaintiff explained to Defendant Ben Ward," that Plaintiff had suffered an acute kidney injury two years prior requiring a Foley catheter. A "jail staff nurse replaced Foley, damaged Plaintiff's uretha" and caused Plaintiff to bleed and develop adhesions. Laser surgery broke the adhesions and opened the urethra, allowing for a normal flow of urine. Plaintiff filed a grievance concerning the "hard to release urine after third twenty four hour confine to bunk order" and sought to see a specialist. The grievance as not sustained and his requests to see a specialist were

1    denied.

2    (Doc. 9 at 5-7 [fn. omitted].)

3        In analyzing Plaintiff's claims against Ruiz and Lightner, the Court found, in relevant

4    part:

5            Plaintiff contends Defendant Ruiz responded to the motor vehicle
             accident in which Plaintiff was involved and took Plaintiff's vehicle,
6            laptop and debit card. (Doc. 1 at 5.) Plaintiff contends he complained
             and requested need of medical attention and that Defendant Ruiz
7            ignored, delayed and prevented medical attention. (*Id*. at 5-6.)
             Plaintiff alleges he suffered head, neck and back injuries from the
8            accident, and was experiencing dizziness and breathing difficulties.
             (*Id*. at 6.) Plaintiff contends Ruiz failed to summon emergency
9            medical services knowing Plaintiff was injured and had requested
             medical treatment following a "high speed vehicle crash." (*Id*. at 8.)
10           Instead of obtaining medical treatment for Plaintiff, Ruiz handcuffed
             Plaintiff and placed "Plaintiff into his hot patrol vehicle." (*Id*.)
11           Plaintiff alleges that after he was transported to the jail and later
             released, he called 911 from the jail lobby and was transported to
12           Community Medical Center. (*Id*. at 9.) Plaintiff "was treated for
             injuries, dizziness, nose bleed, and pain." (*Id*.) Plaintiff further
13           alleged he was subsequently admitted to and received "extensive
             treatment" for nightmares, at Community Behavioral Health, caused
14           by Ruiz having drawn and pointed a handgun at Plaintiff's face. (*Id*.)

15           Liberally construing Plaintiff's complaint, Plaintiff has stated a
             cognizable claim for deliberate indifference to serious medical need
16           against Defendant Ruiz. Plaintiff has plausibly alleged Ruiz made an
             intentional decision with respect to the conditions under which
17           Plaintiff was confined in handcuffs and a patrol car, that those
             conditions put Plaintiff at substantial risk of suffering serious harm,
18           that Ruiz did not take reasonable available measures to abate that
             risk, and that by failing to obtain medical treatment for Plaintiff, Ruiz
19           caused Plaintiff additional injury in the form of continued pain and
             suffering.
20
             Plaintiff alleges "Deputy Christian Lightner Field Supervisor"
21           violated his Fifth, Eighth and Fourteenth Amendment rights. (Doc. 1
             at 10.) Lightner "knew Plaintiff was injured, knew because Plaintiff
22           requested the need for medical attention [at the] time of deputy's
             arrival after vehicle accident." (*Id*.) Despite this knowledge, Plaintiff
23           alleges Lightner failed to summon medical care, "failure to protect,
             and failed to train properly each deputy involved under his
24           supervision and control, when he gave his permission to deny, delay,
             and moreover prevent Plaintiff from medical attention." (*Id*.)
25           Plaintiff further contends Lightner knew or should have known the
             deputies under his supervision and control "were in violation of
26           Plaintiff's Eighth and Fourteenth Amendment rights, acting in
             concert while they denied, delayed, and prevented medical attention
27           to Plaintiff" who was suffering from his injuries. (*Id*.) Plaintiff
             contends Lightner "failed to protect, failed to train properly" those
28           under his command who denied Plaintiff medical attention with

9

Lightner's "permission" and that Lightner "did nothing to stop it." (*Id.*) Due to Lightner's actions, Plaintiff endured undue pain and suffering. (*Id.*)

Plaintiff has sufficiently alleged a deliberate indifference to serious medical needs claim against Defendant Lightner. Plaintiff plausibly alleges Lightner made an intentional decision with respect to the conditions under which Plaintiff was confined in handcuffs and a patrol car, that those conditions put Plaintiff at substantial risk of suffering serious harm, that Lightner did not take reasonable available measures to abate that risk, and that by failing to obtain medical treatment for Plaintiff, Lightner caused Plaintiff additional injury in the form of continued pain and suffering.

As for a failure to protect, there are no specific standards for a failure-to-protect claim brought by a detainee under the Fourteenth Amendment. Thus, Plaintiff's allegations are analyzed under the Eighth Amendment which provides the standards for the treatment prisoners receive in prison and the conditions under which they are confined. …

…

Liberally construing Plaintiff's complaint, Plaintiff has stated a cognizable failure to protect claim against Defendant Lightner as Plaintiff has alleged a substantial risk of serious harm and that Lightner knew Plaintiff faced that substantial risk of serious harm but failed to take any reasonable measure to abate the risk.

As for a failure to train, the Court construes Plaintiff's complaint to assert a claim of supervisor liability as against Defendant Lightner. As previously noted, government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior. *Iqbal*, 556 U.S. at 676-77. Here however, liberally construing Plaintiff's complaint, Plaintiff has sufficiently alleged that Lightner is liable because he participated or directed the violation of Plaintiff's constitutional right and knew of the violation and failed to act to prevent the violation. *Taylor*, 880 F.2d at 1045.

(Doc. 9 at 9-12.)

As concerns Plaintiff's claim against Defendant Cortez, the Court recited the following additional facts:

Plaintiff claims he was thwarted in his efforts to exercise his "pro se privileges," apparently while detained in the Fresno County Jail on or after January 20, 2021. (Doc. 1 at 21.) He contends he submitted a copy of a minute order reflecting he had been "granted propria persona" status allowing for access to legal materials, the law library, the telephone, and "runners, investigators." (*Id.*) Plaintiff alleges these actions caused him "to be tardy for motion presentation." (*Id.*) Plaintiff alleges he was unable to prepare, conduct research, contact an investigator for hire and was prejudiced as a result. (*Id.* at 21-22.)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

> Plaintiff references a "Public Records Act Request" and a refusal to "release per the Public Information Act." (*Id.* at 22.) He further contends his "right to fast and speedy trial" was violated and caused "any chance of a fair trial to be lost." (*Id.*) Apparently as a result of these actions, Plaintiff submitted an inmate grievance on February 19, 2021 "regarding jail records staff violating the court order, violating administrative order jail policy, causing Plaintiff undue suffering and unfair trial." (*Id.*) Plaintiff's grievance was not sustained by "Eunice Olmos Sgt." on April 12, 2021, and upheld following "lieutenant manager's review." (*Id.*) Plaintiff claims "Defendant(s) Supervisor H. Cortez knew they were acting in concert" and "knew Plaintiff's chance of a fair trial would be lost," and despite having "a duty to serve," Cortez did not do so and "did nothing to stop it." (*Id.* at 23.) Plaintiff further contends Cortez's actions caused him to "remain in custody for a longer period of time," causing irreversible damages. (*Id.*)

> …

> Here, liberally construing Plaintiff's complaint, Plaintiff has alleged facts demonstrating Defendant Cortez's interference with Plaintiff's ability to perform legal research and use the law library. Plaintiff has also plausibly alleged an actual injury in the form of missing deadlines in existing underlying criminal proceedings. Thus, Plaintiff has stated a cognizable access to courts claim against Defendant Cortez.

(Doc. 9 at 15-17 [fn. omitted].)

Finally, as concerns Plaintiff's claim against McComas, the following facts were asserted:

> Plaintiff contends "Defendant Bureau Commander McComas comment, a twenty four hour lockdown and confined to bunk order does not pertain to use of bathroom" and "due to disciplinary lockdown for the safety of all inmates in the pod appeal not sustained." (*Id.*) Plaintiff asserts "Defendant(s) while acting in concert failed to protect Plaintiff's safety, causing Plaintiff to hold his urine until scar tissue closed from [pressure] resulting from a direct order." (*Id.*) Plaintiff contends he was unable to stretch his legs, was not free to use the restroom, was not allowed off his bunk and was ordered to lay down on his bunk. (*Id.* at 46.) Plaintiff asserts Defendant McComas "injured Plaintiff when he gave his permission, agreed, giving complete authority to his jail staff without adequate training," causing Plaintiff to suffer additional injuries and "unwanton" pain and suffering. (*Id.* at 53.) McComas failed to protect Plaintiff who was "in need of medical attention," but McComas disregarded the known risk to Plaintiff's health and safety. (*Id.* at 54.)

(Doc. 9 at 19.) And the Court found as follows:

> Liberally construing Plaintiff's complaint, Plaintiff has stated a cognizable claim for deliberate indifference to serious medical need against Defendant McComas. Further, Plaintiff has stated a

11

cognizable failure to protect claim against Defendant McComas as Plaintiff has alleged a substantial risk of serious harm and that McComas knew Plaintiff faced that substantial risk of serious harm but failed to take any reasonable measure to abate the risk. As for a failure to train, liberally construing Plaintiff's complaint, Plaintiff has sufficiently alleged that McComas is liable because he participated or directed the violation of Plaintiff's constitutional right and knew of the violation and failed to act to prevent the violation.

(Doc. 9 at 20.)

## IV.    DEFENDANT CORTEZ'S STATEMENT OF UNDISPUTED FACTS

Defendant Cortez submitted the following Statement of Undisputed Facts:

1. On August 18, 2020, PLAINTIFF was arrested for (i) possession of a firearm by a felon; (ii) possession of a short-barreled shotgun; (iii) carrying a loaded firearm in public; and (iv) being a prohibited person in possession of a firearm/ammunition.

2. On August 19, 2020, PLAINTIFF was released from the Fresno County Jail ("FCJ").

3. On October 23, 2020, PLAINTIFF was remanded into custody at FCJ where he remained until he pled *nolo contendre* on October 4, 2021, and was released.

4. On October 23, 2020, PLAINTIFF was appointed a public defender to represent him in the underlying felony case.

5. Between July 1, 2019, and July 25, 2021, Defendant CORTEZ ("CORTEZ") was employed as a Facilities Sergeant at FCJ.

6. As a Facilities Sergeant, CORTEZ's duties included managing staffing assignments, scheduling, reviewing incident reports, reviewing use of force reports, reviewing inmate rule violations, authorizing employee's annual leave, and inspecting the housing units at FCJ to ensure cleanliness, safety, and security.

7. As a Facilities Sergeant, CORTEZ did not review request forms, unless an inmate specifically requested to talk to a Sergeant.

8. Between October 23, 2020, and October 4, 2021, PLAINTIFF did not request to speak to CORTEZ, nor did CORTEZ review an Inmate Request Form or Inmate Grievance Form submitted by PLAINTIFF.

9. As a facilities sergeant, CORTEZ was not assigned to, nor had any responsibility for

12

the FCJ Law Library, or which inmates were granted access to it.

10. On January 20, 2021, the public defender representing PLAINTIFF was relieved as attorney of record and PLAINTIFF was granted pro per status.

11. On January 20, 2021, PLAINTIFF submitted an Inmate Request Form requesting access to the law library.

12. FCJ has a policy regarding pro per inmates' use of the law library which states: "Inmates who are acting as their own attorney (in propia persona – or "pro per") on a criminal matter pursuant to a court order, and can produce written documentation of such, will be afforded up to ten (10) hours per week access to the LexisNexis Legal Research Kiosk, if they so request."

13. On January 22, 2021, PLAINTIFF was informed that in order to gain access to the FCJ Law Library, he would need to provide a minute order verifying his pro per status.

14. CORTEZ did not know about, review, or respond to the Inmate Request Form submitted by PLAINTIFF on January 20, 2021.

15. On February 10, 2021, PLAINTIFF was submitted an Inmate Request Form requesting a copy of the minute order dated January 20, 2021, confirming his pro per status.

16. On February 16, 2021, PLAINTIFF was granted access to the FCJ Law Library and completed the required kiosk training. PLAINTIFF arrived at the FCJ Law Library at 7:50 a.m. and left at 10:04 a.m.

17. PLAINTIFF utilized the FCJ Law Library Kiosk in 2021 on February 17-19, 22, 23, 25, and March 1, 2, 4, 9, 11, 12, 15, 16, 25, 26, and 30.

18. On February 24, 2021, PLAINTIFF made his first appearance in propria persona. During that hearing, PLAINTIFF brought, and had granted, a continuance motion.

19. Between February 24, 2021, and March 29, 2021, PLAINTIFF filed five motions.

20. One of the motions PLAINTIFF filed on March 15, 2021, was for the court to reappoint defense counsel.

21. On March 29, 2021, the court re-appointed counsel to represent PLAINTIFF.

22. In PLAINTIFF's "Motion to Move the Court, with Good Cause. 995 Motion to Dismiss," filed on March 15, 2021, in Fresno County Superior Court, Case No. F20905986, PLAINTIFF cites (i) Evidence Code section 1109(A); (ii) Evidence Code section 177; (iii) Health and Safety Code section 1250.2 [and] Penal Code section 20; (iv) Penal Code section 29.2; and (v) *People v. Richards* (1969) Cal.App.2nd 768, 773-774.

(Doc. 51-4.)

## V.    DEFENDANTS LIGHTNER AND RUIZ'S STATEMENT OF UNDISPUTED FACTS

Defendants Lightner and Ruiz submitted the following Statement of Undisputed Facts:

1. On August 18, 2020, at approximately 4:15 p.m., Trennis Good ("GOOD") observed a black Mercedes sedan approach rapidly and stop in front of him as GOOD was locking the gate at GOOD's place of employment, located at 22189 East Kings Canyon Road.

2. When the driver of the black Mercedes sedan exited the vehicle, GOOD observed the driver to be a Black male, approximately 6 feet tall, wearing a white t-shirt and jeans.

3. Defendant JOSEPH RUIZ ("RUIZ") later identified the person that GOOD encountered as Plaintiff PERCY LEE RHODES ("PLAINTIFF").

4. Upon exiting his vehicle in front of GOOD's place of business, PLAINTIFF asked for help getting his car towed to Los Angeles because he was being chased and his tire was flat.

5. During his conversation with GOOD, PLAINTIFF never stated to GOOD that he had been in a car accident or that he needed medical attention, and never asked GOOD to call an ambulance.

6. While speaking to PLAINTIFF, GOOD observed what he believed to be a sawed-off shotgun on the floorboard in PLAINTIFF's vehicle. Fearing for his safety, GOOD got into his own vehicle, drove a short distance down the road, and called 911.

14

7.  On August 18, 2020, at approximately 4:23 p.m., RUIZ was dispatched to 22189 East Kings Canyon Road, regarding a 911 emergency call for an individual with a firearm.

8.  Prior to his arrival at 22189 East Kings Canyon Road, Fresno County Sheriff's Office ("FCSO") Dispatch informed RUIZ that the individual with a firearm was a Black male, approximately 6 feet tall, wearing a white t-shirt and jeans.

9.  While GOOD was still on the phone with 911, GOOD observed PLAINTIFF take the sawed-off shotgun out of his vehicle and put it in what appeared to be a pillowcase.

10. After placing the sawed-off shotgun in the pillowcase, PLAINTIFF approached GOOD's vehicle.

11. Shortly after PLAINTIFF approached GOOD's vehicle, at approximately 4:30 p.m., RUIZ arrived on scene.

12. Upon arriving on scene, RUIZ observed a Black male, approximately 6 feet tall, wearing a white shirt and jeans, standing next to a truck with a flatbed trailer attached, and a black Mercedes sedan parked in front of 22189 Kings Canyon Road. On the back of the flatbed trailer attached to the truck, RUIZ observed a pillowcase that had something inside. After exiting his vehicle, RUIZ drew his service weapon and contacted PLAINTIFF.

13. After securing PLAINTIFF and the firearm, which was in the pillowcase on the back of the flatbed trailer attached to the truck, RUIZ placed PLAINTIFF in his patrol car.

14. The air conditioner in RUIZ's patrol car was on the entire time PLAINTIFF was in the back seat.

15. RUIZ spoke to GOOD, who told RUIZ that he had placed the 911 call.

16. PLAINTIFF spent approximately one hour in RUIZ's vehicle between the time he was arrested and when he was transported to FCJ.

17. While RUIZ was gathering identifying information, PLAINTIFF spontaneously stated: (i) at approximately 11:00 p.m. on August 17, 2020, PLAINTIFF was being chased by four vehicles through Fresno; (ii) as soon as he got away, four different vehicles began chasing him; (iii) the individuals pursuing PLAINTIFF were Hispanic gang members;

(iv) the gang members had some means of communication with each other and knew where PLAINTIFF was going to be; (v) this continued throughout the night; (vi) at one point, PLAINTIFF stopped at a gas station, approached one of the gang members, and took the shotgun from him; (vii) on August 18, 2020, PLAINTIFF was driving in the area of Highway 180 and Alta Avenue and was again being pursued by four or five vehicles; (viii) when turning onto Alta Avenue, his tire went flat, he pulled over, and asked GOOD for assistance.

18. PLAINTIFF never told RUIZ he had been in a high-speed crash, that he was injured, or that he needed medical treatment.

19. On August 18, 2020, PLAINTIFF was arrested for (i) possession of a firearm by a felon; (ii) possession of a short-barreled shotgun; (iii) carrying a loaded firearm in public; and (iv) being a prohibited person in possession of a firearm/ammunition.

20. Following RUIZ's investigation, PLAINTIFF was transported to FCJ.

21. Defendant CHRISTIAN LIGHTNER ("LIGHTNER") was not present for the arrest of PLAINTIFF on August 18, 2020, nor did LIGHTNER have contemporaneous knowledge of PLAINTIFF's arrest or direct the actions of the responding deputies.

22. The only knowledge LIGHTNER had of PLAINTIFF's arrest was acquired after the fact and was a result of LIGHTNER reviewing and signing the arrest report prepared by RUIZ as his supervisor.

23. Before being booked into FCJ at approximately 12:43 a.m. on August 19, 2020, PLAINTIFF was medically cleared by Wellpath.

24. Wellpath is FCJ's healthcare contractor.

25. Inmates exhibiting injuries in need of medical attention are not medically cleared by Wellpath to be booked into FCJ.

26. PLAINTIFF was released from FCJ approximately 4:43 a.m. on August 19, 2020.

27. Upon his release, PLAINTIFF called 911 and was transported to Community Regional Medical Center ("CRMC").

28. While at CRMC, PLAINTIFF stated he had been medically cleared at FCJ and wanted

16

to go to the hospital because he was not provided with pain medication.

29. PLAINTIFF's chief complaint was that he had a bloody nose and was dizzy.

30. PLAINTIFF was not found to have any injuries caused by a car accident.

31. CRMC prescribed PLAINTIFF a single tablet of Tylenol.

32. PLAINTIFF left CRMC before the results of his tests were discussed with him by CRMC staff.

33. On October 5, 2020, PLAINTIFF was involuntarily admitted to [Community Behavioral Health Center ("CBHC")] due to paranoia, delusions, and the inability to take care of himself.

34. When PLAINTIFF was involuntarily admitted on October 5, 2020, he believed gang members were going to shoot his home or set it on fire and he was afraid to return home.

35. LIGHTNER is not a policy maker for the Fresno County Sheriff's Office, nor does he have the authority to establish policy.

(Doc. 50-8.)

## VI.    DEFENDANT McCOMAS'S STATEMENT OF UNDISPUTED FACTS

Defendant McComas submitted the following Statement of Undisputed Facts:

1. Plaintiff PERCY LEE RHODES "(PLAINTIFF") was in custody at Fresno County Jail "(FCJ") between October 23, 2020, and October [24], 2021.

2. Defendant STEPHEN McCOMAS ("McCOMAS") was the Assistant Sheriff – Custody Division from April 5, 2021, until being promoted to Undersheriff on April 3, 2023.

3. As the Assistant Sheriff – Custody Division, McComas reported to the Sheriff or Undersheriff. McComas's duties included working collaboratively as a key member of the administrative team to determine policy, develop programs, and formulate operational objectives pursuant to State of California legal requirements and County of Fresno ordinances, policies, and procedural guidelines. In addition, McCOMAS oversaw the administration of the Custody Division and represented Fresno County

17

Sheriff's Office before various groups, boards, and committees.

4. Between March 29 and March 30, 2021, an administrative lockdown was put in place that affected PLAINTIFF's housing unit at FCJ.

5. Administrative lockdowns are initiated by the Watch Commander of the shift, who is most often a lieutenant.

6. McCOMAS was not directly involved with initiating the administrative lockdown between March 29 and March 30, 2021.

7. During an administrative lockdown, an inmate's access to the bathroom is only limited by two factors: (i) when a riot is in progress and until the riot is brought under control; and (ii) if the bathroom is occupied by too many inmates, in which case the inmate would need to wait for availability like any other time.

8. During the administrative lockdown that was in effect between March 29 and March 30, 2021, inmates were neither prohibited or restricted from using the bathroom, nor forced to remain on their beds without the availability to move.

9. Between May 8 and May 9, 2021, a subsequent lockdown was in effect that affected PLAINTIFF's housing unit.

10. McCOMAS was not directly involved with initiating the administrative lockdown between May 8 and May 9, 2021.

11. During the May 8-9, 2021 lockdown, that same conditions and restrictions were in effect that were in place during the March 29-30, 2021 lockdown.

12. No lockdowns affected PLAINTIFF's housing unit between the March 29-30, 2021 lockdown, and the May 8-9 lockdown.

13. On April 15, 2021, PLAINTIFF submitted an Inmate Grievance Form in which he stated that on April 12, 2021, at approximately 10:00 A.M., he experienced a sudden need to urinate five or more times nightly and all through the day.

14. Because PLAINTIFF's April 15, 2021 Inmate Grievance Form was medical in nature, floor staff at FCJ immediately forwarded it to medical staff.

15. As the Assistant Sheriff at the time, McCOMAS did not review, respond, or have

contemporaneous knowledge of PLAINTIFF's April 15, 2021 Inmate Grievance Form.

16. On April 15, 2021, *the same day* PLAINTIFF submitted his Inmate Grievance Form, PLAINTIFF was assessed by a medical provider for painful and difficult release of urine, incontinence occasionally at night, urinary frequency, nocturia, and slow urinary stream.

17. As the Assistant Sheriff at the time, McCOMAS did not participate in, have contemporaneous knowledge of, or review the assessment of PLAINTIFF by medical staff.

18. After an inmate has submitted an Inmate Grievance Form that is medical in nature, and has been assessed by medical staff, the actions taken in response are reviewed.

19. The reviewing medical staff did not sustain PLAINTIFF's April 15, 2021 Inmate Grievance Form because PLAINTIFF had been assessed the same day and had an offsite urology referral pending scheduling.

20. PLAINTIFF was provided with the Inmate Grievance Review Report on April 27, 2021.

21. As the Assistant Sheriff at the time, McCOMAS did not participate in, review, or have contemporaneous knowledge of the Inmate Grievance Review Report provided to PLAINTIFF on April 27, 2021.

22. If an inmate is not satisfied with the response to a submitted medical Inmate Grievance Form, the inmate can submit an Inmate Grievance Appeal Form.

23. On May 2, 2021, PLAINTIFF submitted an Inmate Grievance Appeal Form stating he continued to suffer from pain and two streams of urine.

24. If an inmate submits an Inmate Grievance Appeal Form regarding a medical issue, the original grievance and actions taken are reviewed by Fresno County Jail Health Services Manager ("HSM").

25. After the HSM prepares a response and recommendation, it is reviewed by the Bureau Commander, who either agrees or disagrees with the HSM's recommendation.

26. On May 5, 2021, HSM provided McCOMAS with their recommendation not to sustain PLAINTIFF's Inmate Grievance Appeal Form because PLAINTIFF was seen by medical staff on April 15, 2021, the same day PLAINTIFF submitted his Inmate Grievance Form, and again on May 4, 2021.

27. On May 5, 2021, PLAINTIFF was in the process of being referred to an offsite urologist.

28. McCOMAS agreed not to sustain PLAINTIFF's May 2, 2021 Inmate Grievance Appeal because he had been seen twice by medical staff and was in the process of being referred to a urologist.

29. The first knowledge McCOMAS had regarding PLAINTIFF's alleged urinary issues was gained on May 5, 2021, when he reviewed and signed the Response to Inmate Grievance Appeal and after PLAINTIFF had seen medical staff on April 15, 2021, and May 4, 2021.

30. McCOMAS noted on the Response to Inmate Grievance Appeal that a 24-hour lockdown and confined to bunk order does not pertain to the use of the bathroom facilities nor does it mean an inmate cannot stretch their legs. Inmates are free to use bathroom facilities. They are not free to roam around the housing areas or interact in a normal capacity due to a disciplinary lockdown for the safety of all the inmates in the pod.

31. PLAINTIFF discussed his bladder issues with a jail nurse and not McCOMAS.

(Doc. 52-3.)

## VII.    JUDICIAL NOTICE

Defendant Cortez asks the Court to take judicial notice of the following:

1. Fresno County Superior Court Minute Order in Case No. F20905986 concerning Plaintiff's October 23, 2020, arraignment;

2. Fresno County Superior Court Minute Order in Case No. F20905986 concerning a January 20, 2021, pre-preliminary hearing;

3. Fresno County Superior Court Minute Order in Case No. F20905986 concerning a

1      February 24, 2021, pre-preliminary hearing;

2          4.   A docket report for Fresno County Superior Court Case No. F20905986;

3          5.   Fresno County Superior Court Minute Order in Case No. F20905986 concerning a

4                March 29, 2021, pre-preliminary hearing; and

5          6.   Plaintiff's "Motion to Move the Court, with Good Cause. 995 Motion to Dismiss,"

6                filed on March 15, 2021, in Fresno County Superior Court, Case No. F20905986.

7   (Doc. 51-5.)

8          Defendants Lightner and Ruiz ask the Court to take judicial notice of the following:

9          1.   Fresno County Superior Court Minute Order in Case No. F20905986 concerning

10                Plaintiff's October 23, 2020, arraignment; and

11          2.   Plaintiff's Motion for Private Investigator with Good Cause for New Investigation,

12                filed in Fresno County Superior Court on March 15, 2021, and signed by Plaintiff on

13                February 19, 2021.

14   (Doc. 50-7.) Plaintiff has not opposed or otherwise responded to Defendants' requests.

15          A court may take judicial notice of facts "not subject to reasonable dispute" because they

16   are either "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of

17   accurate and ready determination by resort to sources whose accuracy cannot reasonably be

18   questioned." Fed. R. Evid. 201. A court may take judicial notice of "documents on file in federal

19   and state courts." *Harris v. Cnty. of Orange*, 682 F.3d 1126, 1131-32 (9th Cir. 2012). And a court

20   "may take notice of proceedings in other courts, both within and without the federal judicial

21   system, if those proceedings have a direct relation to matters at issue." *U.S. ex rel. Robinson*

22   *Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) (citation omitted).

23   While a court may take judicial notice of the existence of state court pleadings as filed court

24   records, it does not take notice of the truth of the documents' contents. *Lutge v. Harrington*, No.

25   23-15057, 2024 WL 654915, at *3 (9th Cir. Feb. 16, 2024) (citing *Harris*, 682 F.3d at 1132).

26          Here, the Court finds the Defendants' requests for judicial notice appropriate. Each

27   complies with Rule 201 of the Federal Rules of Evidence, and the Ninth Circuit's holdings in

28   *Harris* and *U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc*. Specifically, the

21

1    Court takes judicial notice of the state court filings reflecting that an arraignment and pre-

2    preliminary hearing proceedings were held in Fresno County Superior Court case number

3    F20905986 on October 23, 2020, January 20, 2021, February 24, 2021, and March 29, 2021, as

4    well as the docket sheet for the action and Plaintiff's March 15, 2021, motion to dismiss, as

5    requested by Defendant Cortez. Further, the Court takes judicial notice of the court filings

6    reflecting an arraignment was held in Fresno County Superior Court case number F20905986 on

7    October 23, 2020, and that Plaintiff prepared and signed a motion seeking the appointment of an

8    investigator in that action on or about February 19, 2021, and filed the motion with the state court

9    on March 15, 2021.

10        **VIII.   SUMMARY OF THE PARTIES' BRIEFING**

11            ***Defendants Lightner and Ruiz's Summary Judgment Motion (Doc. 50)***

12            Ruiz argues the evidence establishes that Plaintiff was not in need of medical attention

13    during their encounter on August 18, 2020. Witness Good advised Ruiz that Plaintiff requested a

14    tow to Los Angeles due to a flat tire; Plaintiff did not state he had been in an accident and needed

15    medical attention, nor did he ask Good to call an ambulance. More particularly, Ruiz

16    acknowledges that he did make the intentional decision to confine Plaintiff in the back of his

17    patrol car for about one hour to investigate. Ruiz argues Plaintiff was not at substantial risk of

18    serious harm because the patrol vehicle was air conditioned, and Plaintiff did not exhibit any sign

19    of injury, nor did he request medical attention. Once transported to the Fresno County Jail, Ruiz

20    contends Plaintiff was cleared by Wellpath medical personnel. Further, even after Plaintiff was

21    released from the jail facility and transported to Community Regional Medical Center following

22    Plaintiff's call for an ambulance, after examination and testing, Plaintiff was prescribed a single

23    Tylenol tablet. Further, Ruiz contends Plaintiff left the hospital on his own before medical staff

24    there could discuss the results of their testing. Next, Ruiz maintains the evidence establishes he

25    took all reasonable measure to abate any risk to Plaintiff; he interviewed witness Good and

26    Plaintiff. Good indicated that Plaintiff requested a tow; no mention was made of an accident or

27    the need for medical attention. Ruiz did not observe any injuries to Plaintiff during their

28    encounter and Plaintiff did not request medical attention. Ruiz asserts his actions were not

1    unreasonable based on the evidence and that Plaintiff did not suffer any injury because of his

2    interaction with Ruiz.

3        Lightner argues the evidence establishes that he was neither present at nor participated in

4    Plaintiff's arrest on August 18, 2020. He maintains he only acquired knowledge of Plaintiff's

5    arrest after reviewing the arrest report prepared by Defendant Ruiz following Plaintiff's arrest.

6    Further, Lightner contends the evidence establishes he is not a policymaker at the Fresno County

7    Sheriff's Office, nor does he have authority concerning its policies. Moreover, Lightner argues

8    the evidence reveals that Plaintiff cannot establish the required causal connection to establish

9    supervisory liability. Finally, Lightner maintains there is no evidence to indicate he failed to

10   protect Plaintiff.

11                    ***Defendant Cortez's Summary Judgment Motion (Doc. 51)***

12       Defendant Cortez contends the evidence establishes that she did not violate Plaintiff's

13   constitutional right to access the courts. Specifically, Cortez maintains (1) Plaintiff had access to

14   and utilized the law library at the Fresno County Jail during the relevant period, (2) Plaintiff

15   cannot establish actual injury, (3) she was not assigned responsibilities pertaining to the law

16   library or access to it, and (4) she had no knowledge of, nor did she review and/or respond to, any

17   grievance submitted by Plaintiff between October 23, 2020, and October 4, 2021.

18                   ***Defendant McComas's Summary Judgment Motion (Doc. 52)***

19       Defendant McComas argues the evidence establishes that he was not deliberately

20   indifferent concerning Plaintiff's conditions of confinement. More particularly, McComas did not

21   have knowledge of Plaintiff's alleged medical condition, nor did he make any decisions regarding

22   the conditions under which Plaintiff was confined. Even assuming McComas did not have such

23   knowledge, Plaintiff received prompt medical attention and there is no evidence to support

24   Plaintiff's allegations that he denied Plaintiff medical care. Further, McComas did not participate

25   in the alleged violation of Plaintiff's constitutional rights, nor is there evidence to establish

26   supervisory liability based upon any policy at the Fresno County Jail. As concerns any failure to

27   protect, McComas contends the evidence establishes Plaintiff was not confined under conditions

28   posing a substantial risk of serious harm, that McComas had no knowledge of a risk to Plaintiff,

1   and that even assuming McComas had such knowledge, reasonable measures abated any risk. As

2   concerns any failure to train, there is no evidence McComas was deliberately indifferent to any

3   need to train subordinates or that any lack of training caused Plaintiff harm or deprived him of his

4   constitutional rights.

5                   ***Plaintiff's Opposition Briefing (Docs. 54, 56, 57, 58)***

6        Plaintiff relies on the allegations made in his complaint and appears to believe his

7   allegations amount to evidence. (*See, e.g*., Doc. 54 at 1 ["opposes defendant's motion arguing of

8   material facts exist from plaintiff's original complaint, nothing has changed, the evidence

9   presented the day of filing has not changed"] & Doc. 56 at 1 [same].)[1]

10                                 Ruiz

11       Plaintiff asserts "the original police report" signed by Ruiz and its statement indicating

12  Ruiz drew his weapon and pointed it at Plaintiff precludes summary judgment. Plaintiff contends

13  medical records from Community Regional Medical Center are evidence of his actual injury,

14  including "treatment for trauma, nose bleed and pain," and that he has received extensive mental

15  health treatment at Community Behavioral Health and continues to do so. Attached in support of

16  his opposition are copies of an appointment reminder for "Jan 23 [no year]" with a nurse

17  practitioner and another for February 4, 2025, with "Teresa R." Further, Plaintiff contends the

18  police report's reference to his vehicle being damaged and in need of a tow "is evidence there was

19  an accident," that Ruiz overlooked the accident "after the fact [Plaintiff] told Ruiz he was injured

20  and needed medical attention." He maintains that witness Good's statement that Plaintiff "was

21  possibly under the influence of a narcotic due to his erratic behavior and incoherent account of

22  events" is evidence that Plaintiff needed medical attention and precludes summary judgment.

23  Plaintiff further contends that he advised Ruiz he was experiencing dizziness and breathing

24  difficulties, and that when Ruiz placed Plaintiff "handcuffed inside his hot vehicle, engine

25  running, windows up, [temperature] above ninety degrees in Sanger for approximately forty five

26  minutes," Ruiz "put Plaintiff at substantial risk of suffering serious harm. He knew." Plaintiff

27  _____

28  [1] There is significant overlap and repetition across Plaintiff's opposition filings. The Court's summary avoids any
    duplication.

asserts he experiences flashbacks and nightmares and had undergone extensive treatment "due to Defendant Ruiz drawing and pointing his handgun directly at Plaintiff's face," and that he continues to experience visual and auditory hallucinations. Plaintiff states Ruiz did not take reasonable measures to abate the risk, failed to obtain medical treatment for Plaintiff and caused Plaintiff additional injury as a result. Plaintiff contends that regarding "Witness Doctor Saucier," "her testimony or statement creates a genuine issue of [material] fact regarding the specific causal link of the retriggers of Plaintiff's post traumatic stress disorder by firearm." Plaintiff makes similar assertions regarding other mental health providers as witnesses and estimates the time for such witness testimony. Plaintiff's opposition is supported by his declaration.

### Lightner

Plaintiff contends Lightner's signature on "the original police report" precludes summary judgment because it "is fact and evidence that he participated, knew, or should have known when he signed he gave his permission and agreed with [Ruiz] in the alleged constitutional deprivation." Plaintiff further asserts Lightner "gave his permission" and "agreed with" Ruiz by signing the police report, indicating Lightner participated in or directed Ruiz to handcuff Plaintiff, place him "inside a hot, engine running, windows up, at [temperatures] above ninety degrees vehicle for well over forty five minutes." Plaintiff maintains he suffered actual injury because of Lightner's actions. Attached in support of his opposition is a copy of page three of the relevant incident report.

### Cortez

Plaintiff maintains Defendant Cortez violated his constitutional rights to access the courts. Attached in support of Plaintiff's opposition is a copy of a two-page minute order dated January 20, 2021, in Fresno County Superior Court case number F20905986-1, and pages 17 and 18, purportedly from the "Fresno County Jail Policy for pro per inmates access to law library." Plaintiff contends his grievance supports his claim and that "Sgt. Eunice Olmos" could provide "testimony or statement and moreover signature attached to Plaintiff's grievance form and dates creates a genuine issue of [material] fact regarding the specific casual link" of Cortez's violation. Plaintiff's opposition is supported by his declaration.

McComas

Plaintiff contends "the original Grievance Form signed and dated by" Defendant McComas supports his deliberate indifference claim against McComas and precludes summary judgment. Plaintiff maintains McComas's signature "as supervisor is fact and evidence that he participated, knew, or should have known when he signed, he gave his permission and agreed with the alleged constitution deprivation." Plaintiff argues he suffered an actual injury "arising from material facts in his original complaint attached with exhibits" and cites to the medical records from Urology Associates of Central California. Attached in support of the opposition is a description of the "Cystoscopy" procedure and an appointment reminder for October 22, 2024, as well as a single page document titled "Clinical Summary for Percy L. Rhodes" dated October 22, 2024. Plaintiff contends that when McComas "used his authority for his jail staff to force Plaintiff to lay down on his bed, he made his own policy, or custom." He asserts McComas "failed to protect his safety" by issuing a direct order and that McComas knew Plaintiff "was unable to stretch his legs, was not free to use the restroom, was not allowed off his bunk and ordered to lay down on his bunk." Plaintiff states McComas has such knowledge because of Plaintiff's grievance. Plaintiff argues McComas "turned a blind eye" to his need for medical attention, refused to take reasonable available measure to abate the risk to Plaintiff, and failed to protect his need for medical attention. Plaintiff maintains he was injured by having to wear a catheter for months causing permanent damage. Plaintiff states he was admitted to Community Regional Medical Center on July 25, 2024, again due to his inability to void his bladder. Plaintiff's opposition is supported by his declaration.

### Defendants Lighter and Ruiz's Reply (Doc. 62)

Initially, Defendants Lightner and Ruiz object to Plaintiff's opposition because it fails to comply with Rule 56(e) and Local Rule 260(b). Further, Defendants contend Plaintiff "simply restates legal conclusions" and improperly relies upon the assertions in his complaint, thus not meeting his burden of production. Specifically, Defendants maintain Plaintiff has failed to proffer any evidence to dispute Lightner's evidence that he was not at the scene of Plaintiff's arrest, had no knowledge of the arrest until the following day, or that Lightner is not a policymaker and lacks

policy making authority. Next, Defendants maintain Plaintiff's use of witness Good's statements in the police report does not amount to evidence that Plaintiff required medical attention, nor does that information contradict Good's declaration in support of their motion. Defendants note Plaintiff's assertions concerning the medical records from Community Regional Medical Center do not create a triable issues of material facts because those records demonstrate Plaintiff did not require medical attention, only that Plaintiff "wanted to go to the hospital because he was not provided pain medication" at the jail. At bottom, Defendants contend Plaintiff failed to provide evidence concerning the required elements of his deliberate indifference to serious medical needs claim.

### *Defendant Cortez's Reply (Doc. 61)*

Defendant Cortez objects to Plaintiff's opposition because it fails to comply with Rule 56(e) and Local Rule 260(b). Further, Cortez argues Plaintiff "simply restates legal conclusions" and improperly relies upon the assertions in his complaint, thus not meeting his burden of production. Specifically, Cortez maintains Plaintiff fails to proffer evidence that Cortez was aware of Plaintiff's grievance concerning access to the law library and fails to dispute Cortez's evidence that Plaintiff had access to and used the law library while acting in pro per in state criminal proceedings. Nor, Cortez argues, has Plaintiff provided evidence that he suffered an actual injury.

### *Defendant McComas's Reply (Doc. 63)*

Like his co-defendants, Defendant McComas objects to Plaintiff's opposition because it fails to comply with Rule 56(e) and Local Rule 260(b). McComas contends that other than providing legal conclusions, Plaintiff has failed to provide evidence concerning the required elements of his deliberate indifference to serious medical needs claim. Plaintiff offers nothing to overcome McComas's evidence that McComas had no knowledge of Plaintiff's condition, and that McComas did not make the decisions regarding the conditions under which Plaintiff was confined in April 2021. Next, McComas contends the unauthenticated medical records from October 2024 do not serve to refute McComas's evidence, nor is there any explanation as to their relevancy.

1    **IX.    EVIDENTIARY MATTERS**

2    Plaintiff has failed to properly respond to Defendants' Statements of Undisputed Facts in

3    support of the motions for summary judgment. Plaintiff was served with *Rand* warnings that

4    included the following language:

5
> In accordance with Local Rule 260(a), Defendant has filed a
6    Statement of Undisputed Facts that contains discrete, specific
> material facts to support their entitlement to summary judgment. In
7    response to this Statement, Local Rule 260(b) requires you to
> "reproduce the itemized facts in the Statement of Undisputed Facts
8    and admit those facts that are undisputed and deny those that are
> disputed, including with each denial a citation to the particular
9    portions of any pleading, affidavit, deposition, interrogatory answer,
> admission, or other document relied upon in support of that denial."
10   You may also "file a concise Statement of Disputed Facts, and the
> source thereof in the record, of all additional material facts as to
11   which there is a genuine issue precluding summary judgment or
> adjudication." *Id*. You are responsible for filing all evidentiary
12   documents cited in the opposing papers. *Id.*

13   (Docs. 50-5, 51-3 & 52-4.) Plaintiff neither reproduced Defendants' itemized facts, nor admitted

14   or denied those facts. Because Plaintiff has not complied with Rule 260(b), the Court deems

15   Plaintiff to have admitted those facts. *See, e.g.*, *Beard v. Banks*, 548 U.S. 521, 527 (2006) ("by

16   failing specifically to challenge the facts identified in the defendant's statement of undisputed

17   facts, [plaintiff] is deemed to have admitted the validity of the facts contained in the [defendant's]

18   statement."); *Brito v. Barr*, No. 2:18-cv-00097-KJM-DB, 2020 WL 4003824, at *6 (E.D. Cal.

19   July 15, 2020) (deeming defendant's undisputed facts as admitted after plaintiff failed to comply

20   with Local Rule 260(b)); *see also Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).

21   Nevertheless, where Plaintiff's verified complaint or evidence submitted in support of his

22   opposition to Defendants' motions for summary judgment bring Defendants' proffered facts into

23   dispute, the Court considered the complaint and any evidence. *Jones*, 393 F.3d at 923 (the court

24   considers as evidence those parts of the verified complaint based on plaintiff's personal

25   knowledge).

26   A review of Plaintiff's complaint filed June 16, 2021, reveals the following exhibits:

27   1.   A copy of a Fresno County Sheriff's Office Inmate Grievance Form signed by

28       Plaintiff on April 18, 2021;

2.  A copy of an Inmate Grievance Review Report regarding grievance number 2021040099, dated May 4, 2021, and completed by C. Blair;

3.  A copy of an Inmate Request Form completed by Plaintiff and dated February 21, 2021, concerning privileged communications. The copy includes a response dated February 23, 2021;

4.  A copy of an Inmate Grievance Appeal Form regarding grievance number 2021040099, signed by Plaintiff on May 19, 2021. Included is a response dated May 25, 2021, by Defendant McComas, agreeing with the grievance decision;

5.  A copy of an Inmate Grievance Form signed by Plaintiff on February 3, 2021;

6.  A copy of an Inmate Grievance Review Report regarding grievance number 20210200023, dated February 8, 2021, and completed by Z. Williams;

7.  A copy of an Inmate Grievance Form signed by Plaintiff on April 15, 2021;

8.  A copy of an Inmate Grievance Review Report regarding grievance number 2021040084, dated April 27, 2021, and completed by Z. Williams; and

9.  A copy of an Inmate Grievance Appeal Form regarding grievance number 2021040084, signed by Plaintiff on May 2, 2021. Included is a response dated May 5, 2021, by Defendant McComas, agreeing with the grievance decision.

(*See* Doc. 1 at 37-41, 47-52.)

**X.      DISCUSSION**[2]

*A.  Defendant Cortez Is Entitled to Summary Judgment*

Defendant Cortez has presented evidence that between July 1, 2019, and July 25, 2021, she was the Facilities Sergeant at FJC, a position that did not include any responsibility for or relation to the law library. Cortez UDF 5-7, 9. Further, she has presented evidence that while she would meet with inmates in her role as sergeant if requested to do so, Plaintiff made no such

---

[2] In arriving at its conclusion, the Court carefully reviewed and considered all arguments, points and authorities, declarations, exhibits, statements of undisputed facts and responses thereto, if any, objections, and other papers filed by the parties. Omission of reference to an argument, document, paper, or objection does not reflect that the Court did not consider the argument, document, paper, or objection. To the contrary, the Court thoroughly reviewed and considered the evidence it deemed admissible, material, and appropriate.

request. Cortez UDF 7-8. And Cortez did not review any inmate request form or inmate grievance form submitted by Plaintiff during the relevant period. Cortez UDF 7-8, 14. Defendant Cortez has also presented evidence reflecting that Plaintiff requested law library access related to his pro per status in state court criminal proceedings on January 20, 2021, and was advised the following day he must provide a minute order verifying his pro per status before receiving additional access to the research kiosk. Cortez UDF 10-13. She was not aware of, nor did she review Plaintiff's January 20, 2021, request. Cortez UDF 14. The evidence further indicates that Plaintiff submitted the required minute order on February 10, 2021, and was granted access to the law library on February 16, 2021; he completed required kiosk training that same date. Cortez UDF 15-16. Cortez has also presented evidence that Plaintiff used the law library and kiosk on 18 occasions between February 17 and March 30, 2021, and filed five motions in the state court during that same period. Cortez UDF 17, 19. One of the motions asked the court to reappoint defense counsel and another moved to dismiss the case against Plaintiff. Cortez UDF 20-22.

In sum, Defendant Cortez's evidence demonstrates there is no genuine dispute as to any material fact concerning Plaintiff's access to courts claim. Cortez was not involved in any action related to Plaintiff's law library access, and there is no evidence to indicate Cortez frustrated or impeded Plaintiff's attempt to assert legal claims in the state court criminal proceedings; therefore, Plaintiff cannot establish an actual injury. *Lewis*, 518 U.S. at 348-49; *Greene*, 648 F.3d at 1018 (9th Cir. 2011); *Simmons*, 318 F.3d at 1160; *see Christopher*, 536 U.S. at 415. Thus, Defendant Cortez has met her initial burden by demonstrating there is no genuine dispute as to any material fact concerning Plaintiff's First Amendment access to courts claim. Fed. R. Civ. P. 56(a). Because Defendant has met her initial burden, the burden shifts to Plaintiff as the non-moving party to establish that a genuine issue as to any material fact exists. *Matsushita*, 475 U.S. at 586.

First, the assertions made in Plaintiff's complaint do not establish the existence of any factual dispute. *See* Fed. R. Civ. P. 56(c); *Beard*, 548 U.S. at 527; *McElyea*, 833 F.2d at 197-98. Stated another way, allegations are not evidence. Nor do any exhibits to Plaintiff's complaint amount to evidence that Defendant Cortez violated his First Amendment right to access the

1   courts. (*See* Doc. 1 at 37-41, 47-52.)

2       To the extent Plaintiff's opposition argues Defendant Cortez had knowledge of Plaintiff's

3   request for access to the law library due to his pro se status, or that he has established a causal

4   connection and/or supervisory liability, he offers no evidence to support his argument. Fed. R.

5   Civ. P. 56(c); *Rizzo v. Goode*, 423 U.S. 362, 373-75 (1976); *Taylor v. List*, 880 F.2d 1040, 1045

6   (9th Cir. 1989); *Waggy v. Spokane Cnty. Washington*, 594 F.3d 707, 713 (9th Cir. 2010). Again,

7   allegations made in a complaint are insufficient to establish a genuine issue of material fact exists.

8   Nor has Plaintiff offered any evidence to contradict Cortez's evidence that she had no

9   responsibility related to the law library, nor any involvement in Plaintiff's access to the law

10  library.

11      As concerns Plaintiff's declaration in support of his opposition to Defendant Cortez's

12  summary judgment motion (*see* Doc. 54 at 19.), the declaration is not signed under penalty of

13  perjury. 28 U.S.C. § 1746 (declaration must be signed under penalty of perjury); *see also Young*

14  *v. Allstate Co*., 662 F. Supp. 3d 1066, 1072 (C.D. Cal. 2023) (explaining that declarations were

15  "fatally defective" when they were not signed under penalty of perjury and noting that "[o]nly

16  sworn affidavits—or unsworn declarations that are, inter alia, subscribed under penalty of perjury,

17  pursuant [to] 28 U.S.C. § 1746—satisfy the requirement of Rule 56(c)(4)"). Even so, other than

18  stating he is over 18 years old, has "personal knowledge of the matters stated herein," has

19  "reviewed and [is] familiar with the operative pleading, and response related to [his] claim

20  against" Cortez, and states his "initial disclosure [pursuant to Rule 26(A)1] of the Federal Rules

21  of Civil Procedure] is complete and correct," the declaration in no way serves to overcome

22  Cortez's evidence.

23      In sum, Plaintiff has not met his burden as the non-moving party. Fed. R. Civ. P. 56(c);

24  *Matsushita*, 475 U.S. at 586 n.11; *Anderson*, 477 U.S. at 248; *T.W. Elec. Serv., Inc*., 809 F.2d at

25  630. No reasonable jury would return a verdict for Plaintiff. *Wool*, 818 F.2d at 1436. Defendant

26  Cortez is entitled to summary judgment. *Celotex Corp.*, 477 U.S. at 322.

27  ///

28

1

***B.  Defendants Ruiz and Lightner Are Entitled to Summary Judgment***

2

<u>Defendant Ruiz</u>

3

Defendant Ruiz has presented evidence that on the afternoon of August 18, 2020,

4

Plaintiff, the driver of a black Mercedes sedan, approached Trennis Good's place of employment

5

as Good was locking the gate. Lightner & Ruiz (L&R) UDF 1-3. Plaintiff asked Good for help

6

getting his car towed to Los Angeles because his tire was flat, and he was being chased; he did

7

not tell Good he had been in an accident or needed medical attention and never asked Good to

8

call an ambulance. L&R UDF 4-5. Good observed what appeared to be a sawed-off shotgun on

9

the floorboard of Plaintiff's sedan and removed himself a short distance to call 911. L&R UDF 6.

10

While on the phone with 911, Good observed Plaintiff remove the shotgun, place it in a

11

pillowcase and began to approach Good's vehicle. L&R UDF 9-10.

12

When Ruiz arrived on the scene in response to a call about an individual with a firearm,

13

he observed Plaintiff standing next to a truck with a flatbed trailer and a black Mercedes sedan

14

nearby. L&R UDF 11-12. Ruiz also observed a pillowcase with something inside on the back of

15

the flatbed trailer. L&R 12. After drawing his service weapon and contacting Plaintiff, Ruiz

16

secured both, placing Plaintiff in the back of his air-conditioned patrol vehicle. L&R 12-14.

17

While Ruiz investigated and spoke with Good, Plaintiff remained in the patrol vehicle and was

18

then transported to FJC— a period of about one hour. L&R UDF 15-16. When Ruiz gathered

19

identifying information from Plaintiff, Plaintiff spontaneously stated the following: that he had

20

been chased the prior evening by four vehicles; that when he got away another four vehicles

21

began chasing him and that those individuals were Hispanic gang members; that the gang

22

members communicated within one another and knew where Plaintiff was going to be; that the

23

chase continued all night and at some point Plaintiff stopped at a gas station and took a shotgun

24

from an approaching gang member; that on August 18, 2020, near Highway 180 and Alta

25

Avenue, Plaintiff was pursued by four or five vehicles; and that when he turned on Alta Avenue

26

his tire went flat, he pulled over, and asked Good for help. L&R UDF 17. Plaintiff never advised

27

Ruiz he had been in a high-speed crash, was injured, or required medical attention. L&R UDF 18.

28

Plaintiff was then transported to FJC. L&R UDF 19.

1    Ruiz has also presented evidence that before Plaintiff was booked into FJC, he was seen

2    and cleared by FJC's healthcare contractor, Wellpath. L&R UDF 23-24. Inmates exhibiting

3    injuries in need of medical attention are *not* cleared by Wellpath. L&R UDF 25. Plaintiff was

4    booked into FJC at 12:43 a.m. on August 19, 2020, and released at 4:43 a.m. L&R UDF 23, 26.

5    Upon his release from FJC, Plaintiff called 911 to be transported to Community Regional

6    Medical Center. L&R UDF 27. Because Plaintiff had been medically cleared at FJC, he wanted

7    pain medication from the hospital; his complaints included dizziness and a bloody nose. L&R

8    UDF 28-29. No injuries caused by a car accident were found and Plaintiff was prescribed a single

9    tablet of Tylenol before Plaintiff left the hospital and before staff discussed his test results. L&R

10    UDF 30-32. On October 5, 2020, Plaintiff was involuntarily admitted to the Community

11    Behavioral Health Center due to paranoia, delusions, and an inability to care for self, fearing gang

12    members were going to shoot his home or set it on fire. L&R UDF 34-35.

13    Defendant Ruiz's evidence demonstrates there is no genuine dispute as to any material

14    fact concerning Plaintiff's Fourteenth Amendment deliberate indifference to serious medical

15    needs claim. In short, Ruiz has presented evidence to indicate Plaintiff is unable to establish that

16    Ruiz made an intentional decision concerning Plaintiff's confinement that placed Plaintiff at

17    substantial risk of suffering serious harm, or that Ruiz failed to take reasonable available

18    measures to abate a risk that would have otherwise been appreciated by a reasonable officer

19    making the consequences of Ruiz's conduct obvious, or that Ruiz caused Plaintiff's injuries.

20    Thus, Defendant Ruiz has met his initial burden by demonstrating there is no genuine

21    dispute as to any material fact concerning Plaintiff's Fourteenth Amendment deliberate

22    indifference to serious medical needs claim. Fed. R. Civ. P. 56(a); *Gordon*, 888 F.3d at 1125.

23    Because Defendant Ruiz has met his initial burden, the burden shifts to Plaintiff as the non-

24    moving party to establish that a genuine issue as to any material fact actually does exist.

25    *Matsushita*, 475 U.S. at 586.

26    As noted above, the assertions made in Plaintiff's complaint do not establish the existence

27    of any factual dispute. *See* Fed. R. Civ. P. 56(c); *Beard*, 548 U.S. at 527; *McElyea v. Babbitt*, 833

28    F.2d 196, 197-98 (9th Cir. 1987) (per curiam). Nor do any exhibits attached to Plaintiff's

33

1    complaint amount to evidence that Defendant Ruiz violated his Fourteenth Amendment rights.

2    (*See* Doc. 1 at 37-41, 47-52.)

3          To the extent Plaintiff's opposition argues Good's statement, purportedly noting the

4    Mercedes sedan was damaged and in need of a tow, "is evidence that their [sic] was an accident,

5    an accident over looked by" Ruiz, Plaintiff is mistaken. The need for a tow or even damage to the

6    Mercedes sedan beyond a flat tire is not evidence that an accident occurred or was overlooked by

7    Ruiz. Plaintiff offers nothing more than a legal conclusion. *See Flaherty v. Warehousemen,*

8    *Garage & Service Station Employees' Local Union No. 334*, 574 F.2d 484, 486 n.2 (9th Cir.

9    1978) (assertions made in legal memoranda are not evidence); *Burch v. Regents of Univ. of*

10   *California*, 433 F. Supp.2d 1110, 1119 (E.D. Cal. 2006) ("statements in declarations based on

11   speculation or improper legal conclusions, or argumentative statements, are not *facts* and likewise

12   will not be considered on a motion for summary judgment") (emphasis in original).

13         The same holds true for Plaintiff's argument that Good's purported statement that Plaintiff

14   may have been under the influence is evidence of Ruiz's deliberate indifference. This too is a

15   legal conclusion, not evidence. *Flaherty*, 574 F.2d at 486 n.2; *Burch*, 433 F. Supp.2d at 1119.

16   And inferences are not drawn out of the air; it is Plaintiff's obligation to produce a factual

17   predicate from which a reasonable inference can be drawn. *Richards*, 602 F. Supp. at 1244-45. He

18   has failed to do so. Further, Plaintiff fails to offer any evidence to overcome Defendant Ruiz's

19   proffer that Plaintiff was cleared by Wellpath before being confined at FJC. Whether the air

20   conditioning was operating in Ruiz's patrol car during the hour Plaintiff was detained inside is not

21   material to the dispute considering the evidence in this record. *Anderson*, 477 U.S. at 248; *T.W.*

22   *Elec. Serv., Inc.*, 809 F.2d at 630.

23         Next, Plaintiff's argument that Community Regional Medical Center records show actual

24   injury because he was "treated for trauma" is not supported by the record. The hospital records

25   reveal Plaintiff's chief complaints were dizziness and a bleeding nose. (Doc. 50-7 at 19.) The

26   diagnoses included dizziness and an unspecified headache. (*Id.*) The medical findings were

27   normal and Plaintiff "eloped before his results were discussed." (*Id.* at 19-23.) Plaintiff was

28   treated with one 1,000 milligram Tylenol tablet. (*Id.* at 24.)

An EMS report reveals Plaintiff did not "state where he was having pain" but repeatedly stated "he needed the ED to give him pain medication." (Doc. 50-7 at 10.) The report also notes Plaintiff was "in no obvious, acute distress." (*Id*.) And while there is evidence that Plaintiff was involuntarily committed for paranoid delusions—specifically, fearing that gang members were going to shoot his home or set it on fire—and an inability to care for himself in October 2020, records make no mention of flashbacks or post-traumatic stress because of Plaintiff's interaction with Ruiz. (*See id*. at 15-16.) Nor do appointment reminders for mental health treatment in 2025 support Plaintiff's claim in that regard.

As concerns Plaintiff's declaration in support of his opposition to Defendant Ruiz's summary judgment motion (Doc. 56 at 17), the declaration is not signed under penalty of perjury. 28 U.S.C. § 1746 (declaration must be signed under penalty of perjury). Nevertheless, other than stating he is over 18 years old, has "personal knowledge of the matters stated herein," has "reviewed and [is] familiar with the operative pleading, and response related to [his] claim against" Ruiz, and states his "initial disclosure [pursuant to Rule 26(A)1) of the Federal Rules of Civil Procedure] is complete and correct," the declaration does not overcome Ruiz's evidence.

In sum, Plaintiff has not met his burden as the non-moving party. Fed. R. Civ. P. 56(c); *Matsushita*, 475 U.S. at 586 n.11; *Anderson*, 477 U.S. at 248; *T.W. Elec. Serv., Inc*., 809 F.2d at 630. No reasonable jury would return a verdict for Plaintiff. *Wool*, 818 F.2d at 1436. At best, Plaintiff offers nothing more than some metaphysical doubt. *Matsushita*, 475 U.S. at 587. Therefore, Defendant Ruiz is entitled to summary judgment. *Celotex Corp.*, 477 U.S. at 322.

Defendant Lightner

Defendant Lightner has presented evidence that he was not present during Plaintiff's arrest, had no contemporaneous knowledge of the arrest, and did not direct the actions of Defendant Ruiz or responding deputies. L&R UDF 21. Lightner learned of Plaintiff's arrest by reviewing Ruiz's subsequently submitted arrest report. L&R UDF 22. As concerns any injury claimed by Plaintiff, Lightner, like Ruiz, has presented evidence that before Plaintiff was booked into FJC, he was seen and cleared by FJC's healthcare contractor, Wellpath. L&R UDF 23-24. Inmates exhibiting injuries in need of medical attention are *not* cleared by Wellpath. L&R UDF

35

1    25. Plaintiff was booked into FJC at 12:43 a.m. on August 19, 2020, and released at 4:43 a.m.

2    L&R UDF 23, 26. Further, Defendant Lightner's evidence reveals that upon Plaintiff's release

3    from FJC, Plaintiff called 911 to be transported to Community Regional Medical Center. L&R

4    UDF 27. Because Plaintiff had been medically cleared at FJC, he wanted pain medication from

5    the hospital; his complaints included dizziness and a bloody nose. L&R UDF 28-29. No injuries

6    caused by a car accident were found and Plaintiff was prescribed a single tablet of Tylenol before

7    Plaintiff left the hospital and before staff discussed his test results. L&R UDF 30-32. On October

8    5, 2020, Plaintiff was involuntarily admitted to the Community Behavioral Health Center due to

9    paranoia, delusions, and an inability to care for self, fearing gang members were going to shoot

10   his home or set it on fire. L&R UDF 34-35.

11        Defendant Lightner's evidence demonstrates there is no genuine dispute as to any material

12   fact concerning Plaintiff's Fourteenth Amendment deliberate indifference to serious medical

13   needs claim. Lightner has presented evidence to indicate Plaintiff is unable to establish that

14   Lightner made an intentional decision concerning Plaintiff's confinement that placed Plaintiff at

15   substantial risk of suffering serious harm, or that Lightner failed to take reasonable available

16   measures to abate a risk that would have otherwise been appreciated by a reasonable officer

17   making the consequences of Lightner's conduct obvious, or that Lightner caused Plaintiff's

18   injuries.

19        Thus, Defendant Lightner has met his initial burden by demonstrating there is no genuine

20   dispute as to any material fact concerning Plaintiff's Fourteenth Amendment deliberate

21   indifference to serious medical needs claim. Fed. R. Civ. P. 56(a); *Gordon*, 888 F.3d at 1125.

22   Because Defendant Lightner has met his initial burden, the burden shifts to Plaintiff as the non-

23   moving party to establish that a genuine issue as to any material fact does exist. *Matsushita*, 475

24   U.S. at 586.

25        Again, the assertions made in Plaintiff's complaint do not establish the existence of any

26   factual dispute. *See* Fed. R. Civ. P. 56(c); *Beard*, 548 U.S. at 527; *McElyea*, 833 F.2d at 197-98.

27   Nor do any exhibits to Plaintiff's complaint amount to evidence that Defendant Lightner violated

28   his Fourteenth Amendment rights. (*See* Doc. 1 at 37-41, 47-52.)

1    Plaintiff offers nothing more than legal conclusions, rather than evidence, that Lightner is

2    culpable. *Flaherty*, 574 F.2d at 486 n.2; *Burch*, 433 F. Supp.2d at 1119. But Lightner's evidence

3    reveals otherwise: Lightner did not participate in Plaintiff's arrest, did not have any

4    contemporaneous knowledge of the arrest, and did not direct Ruiz or any other responding

5    deputy's actions concerning Plaintiff's arrest. *Iqbal*, 556 U.S. at 676-77; *Rizzo*, 423 U.S. at 373-

6    75; *Taylor*, 880 F.2d at 1045; *Waggy*, 594 F.3d at 713. And, as above, Plaintiff's declaration is

7    defective and, even absent that defect, in no way overcomes Lightner's evidence. 28 U.S.C. §

8    1746.

9    In short, Plaintiff has not met his burden as the non-moving party. Fed. R. Civ. P. 56(c);

10   *Matsushita*, 475 U.S. at 586 n.11; *Anderson*, 477 U.S. at 248; *T.W. Elec. Serv., Inc.*, 809 F.2d at

11   630. No reasonable jury would return a verdict for Plaintiff. *Wool*, 818 F.2d at 1436. Thus,

12   Defendant Lightner is entitled to summary judgment. *Celotex Corp.*, 477 U.S. at 322.

13   ### *C.  Defendant McComas Is Entitled to Summary Judgment*

14   Defendant McComas has presented evidence that he was the Assistant Sheriff in the

15   Custody Division between April 5, 2021, until his promotion to Undersheriff on April 3, 2023 —

16   a period that overlaps with Plaintiff's FJC incarceration from October 23, 2020, through October

17   4, 2021. McComas UDF 1-2. Reporting to the Sheriff and Undersheriff, McComas worked

18   collaboratively as a key member of the administrative team to determine policy, develop

19   programs, and to formulate operational objections pursuant to state, county, and city ordinances,

20   policies and procedural guidelines. McComas UDF 3. McComas's evidence further indicates he

21   oversaw the administration of the Custody Division and represented the department before

22   various groups, boards, and committees. McComas UDF 3.

23   Next, McComas's evidence indicates that between March 29 and 30, 2021, an

24   administrative lockdown affecting Plaintiff's housing unit was initiated by the watch commander

25   of the shift, typically a lieutenant. McComas UDF 4-5. McComas was not directly involved in

26   initiating the subject lockdown. McComas UDF 6. McComas's evidence further indicates that

27   during an administrative lockdown, an inmate's bathroom access is limited only when a riot is in

28   progress and until the riot is controlled, or if the bathroom is occupied by too many inmates,

37

1   resulting in a wait by an inmate wishing to use the facility. McComas UDF 7. During the March

2   29 through March 30, 2021, lockdown, neither limitation applied. McComas UDF 8.

3           Moreover, McComas's evidence indicates that as concerns the administrative lockdown

4   between May 8 and May 9, 2021, he was not involved in its initiation and that the same

5   conditions and restrictions applied as those present during the March 2021 lockdown. McComas

6   UDF 9-11. No other lockdowns occurred in Plaintiff's housing unit between the March and May

7   2021 lockdowns. McComas UDF 12.

8           Next, McComas's evidence establishes that Plaintiff submitted a medical grievance on

9   April 15, 2021; that grievance was immediately forwarded by FJC floor staff to medical staff.

10  McComas UDF 14-15. McComas did not review, respond to, or have contemporaneous

11  knowledge of Plaintiff's April 15, 2021, grievance. McComas UDF 15. Further, the evidence

12  reveals Plaintiff's was seen by a medical provider that same day for painful and difficult release

13  of urine, occasional incontinence, urinary frequency, nocturia, and slow urinary stream.

14  McComas UDF 16. McComas did not participate in or have contemporaneous knowledge of the

15  medical staff's assessment of Plaintiff. McComas UDF 17. Plaintiff's grievance was not sustained

16  because Plaintiff was assessed by medical staff that same date and because an offsite urology

17  referral was then pending. McComas UDF 18-20. McComas's evidence demonstrates that as

18  Assistant Sheriff he was not involved in nor did he have contemporaneous knowledge of the April

19  27, 2021, grievance review report. McComas UDF 20-21. Further, when Plaintiff submitted an

20  inmate grievance appeal form on May 2, 2021, it was reviewed by FCJ's health services manager.

21  McComas UDF 22-24. The health services manager's decision is then reviewed by a bureau

22  commander. McComas UDF 25. On May 5, 2021, the health service manager's recommendation

23  not to sustain Plaintiff's appeal, noting Plaintiff received medical treatment on April 15 and May

24  4, 2021, was submitted to McComas — the same date Plaintiff's offsite urology referral was in

25  process. McComas UDF 25-27. McComas agreed with the health services manager's

26  determination not to sustain for those reasons. McComas UDF 28. McComas's review of May 5,

27  2021, was the first time McComas learned of Plaintiff's medical condition. McComas UDF 29. In

28  his response to Plaintiff's appeal, McComas advised that a 24-hour lockdown and confined to

1    bunk order does not pertain to the use of bathroom facility nor does it prevent an inmate from

2    stretching his legs; inmates are free to use the bathroom facilities but are not allowed to freely

3    roam the housing areas or interact normally as they would absent the lockdown. McComas UDF

4    30. Plaintiff did not discuss his urinary or bladder medical issues with McComas. McComas UDF

5    31.

6          Defendant McComas's evidence demonstrates there is no genuine dispute as to any

7    material fact concerning Plaintiff's Fourteenth Amendment deliberate indifference to serious

8    medical needs claim. McComas has presented evidence to indicate Plaintiff is unable to establish

9    that McComas made an intentional decision concerning Plaintiff's confinement that placed

10   Plaintiff at substantial risk of suffering serious harm, including during lockdowns, or that

11   McComas failed to take reasonable available measures to abate a risk that would have otherwise

12   been appreciated by a reasonable officer making the consequences of McComas's conduct

13   obvious, or that McComas caused Plaintiff's injuries.

14         Thus, Defendant McComas has met his initial burden by demonstrating there is no

15   genuine dispute as to any material fact concerning Plaintiff's Fourteenth Amendment deliberate

16   indifference to serious medical needs claim. Fed. R. Civ. P. 56(a); *Gordon*, 888 F.3d at 1125.

17   Because Defendant McComas has met his initial burden, the burden shifts to Plaintiff as the non-

18   moving party to establish that a genuine issue as to any material fact does exist. *Matsushita*, 475

19   U.S. at 586.

20         As above, Plaintiff fails to meet his burden of production. Once again, Plaintiff offers

21   legal conclusions (e.g., McComas's signature is evidence of his participation and/or knowledge)

22   rather than evidence. *Flaherty*, 574 F.2d at 486 n.2; *Burch*, 433 F. Supp.2d at 1119. Nor do the

23   allegations in Plaintiff's complaint establish the existence of any factual dispute related to

24   Defendant McComas. *See* Fed. R. Civ. P. 56(c); *Beard*, 548 U.S. at 527; *McElyea*, 833 F.2d at

25   197-98.

26         Plaintiff fails to establish a genuine dispute of material fact that McComas participated in

27   the alleged constitutional violation, that he had any contemporaneous knowledge of Plaintiff's

28   condition, or that he directed the actions of other staff as concerns Plaintiff and any constitutional

1    violation. *Iqbal*, 556 U.S. at 676-77; *Rizzo*, 423 U.S. at 373-75; *Taylor*, 880 F.2d at 1045; *Waggy*,

2    594 F.3d at 713.

3        Nor do the complaint's attached exhibits amount to evidence that Defendant McComas

4    violated Plaintiff's Fourteenth Amendment rights. (*See* Doc. 1 at 37-41, 47-52.) Further, the

5    exhibits attached to Plaintiff's opposition involve procedures and treatment in October 2024, well

6    outside the relevant period. Nothing in the exhibits indicates McComas was culpable in April or

7    May of 2021 when Plaintiff's claim arose. Thus, these exhibits do not serve to counter

8    McComas's evidence that Plaintiff was provided with medical care on the same date he filed his

9    original grievance and was timely referred to an outside medical provider for specialized care.

10   And, again, Plaintiff's declaration is defective and, even absent that defect, in no way overcomes

11   McComas's evidence. 28 U.S.C. § 1746.

12       In conclusion, Plaintiff has not met his burden as the non-moving party. Fed. R. Civ. P.

13   56(c); *Matsushita*, 475 U.S. at 586 n.11; *Anderson*, 477 U.S. at 248; *T.W. Elec. Serv., Inc.*, 809

14   F.2d at 630. No reasonable jury would return a verdict for Plaintiff. *Wool*, 818 F.2d at 1436.

15   Thus, Defendant McComas is entitled to summary judgment. *Celotex Corp.*, 477 U.S. at 322.

16   **XI.    CONCLUSION AND ORDER**[3]

17       Based on the foregoing, the Court **HEREBY ORDERS** that:

18   1.   Defendants Lightner and Ruiz's motion for summary judgment (Doc. 50) is

19           **GRANTED**;

20   2.   Defendant Cortez's motion for summary judgment (Doc. 51) is **GRANTED**;

21   3.   Defendant McComas's motion for summary judgment (Doc. 52) is **GRANTED**; and

22   4.   The Clerk of the Court is directed to enter judgment in favor of Defendants Cortez,

23           Lightner, McComas, and Ruiz and to close this case.

24   IT IS SO ORDERED.

25   Dated:   **August 5, 2025**

26                                                   UNITED STATES MAGISTRATE JUDGE

27

28
     _____
     [3] This action was reassigned to the undersigned for all purposes on October 25, 2023. (*See* Doc. 36.)

40